UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| GARY CAPPELINE, JANE HILK, KIM ANN | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MINK, LINDA MYRICK, KAREN OSAR, | : **SECURITIES EXCHANGE ACT OF** |
| JOHN M. STEITZ, PETER T. THOMAS, | : **1934** |
| ROBERT J. ZATTA, INNOPHOS | : |
| HOLDINGS, INC., | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Innophos Holdings, Inc. ("Innophos or the "Company"), and the members Innophos's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Innophos and affiliates of by One Rock Capital Partners, LLC ("Rock Capital"), a private equity firm.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on September 30, 2019 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Iris Merger Sub 2019, Inc. ("Merger Sub") will merge with and into the Company, resulting with the Company surviving the merger and becoming a wholly owned direct subsidiary of Iris Parent LLC ("Parent") (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Innophos common share issued and outstanding will be converted into the right to receive $32.00 per share in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Innophos's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisor of the Company, Lazard Frères & Co. LLC ("Lazard") in conducting the valuation analyses in support of the fairness opinion. The Proxy Statement also omitted material information with respect with its analyses performed to reach the fairness opinions from Lazard and information with respect to the sales process.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Innophos's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Innophos common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Gary Cappeline has served as a member of the Board since 2007.

11. Individual Defendant Jane Hilk has served as a member of the Board since 2018.

12. Individual Defendant Kim Ann Mink has been the Company's Chief Executive Officer and President since December 2015, a director of Innophos since January 2016, and Chairman of the Board since February 2017.

13. Individual Defendant Linda Myrick has served as a member of the Board since 2006.

14. Individual Defendant Karen Osar has served as a member of the Board since 2007.

15. Individual Defendant John M. Steitz has served as a member of the Board since 2009.

16. Individual Defendant Peter T. Thomas has served as a member of the Board since 2016.

17. Individual Defendant Robert J. Zatta has served as a member of the Board since 2016.

18. Defendant Innophos is incorporated in Delaware and maintains its principal offices at 259 Prospect Plains Road, Building A, Cranbury, NJ 08512. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "IPHS."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.    The Proposed Transaction**

21. Innophos, together with its subsidiaries, produces specialty ingredients with applications in food, health, nutrition, and industrial markets. It operates through three segments:

4

Food, Health and Nutrition; Industrial Specialties; and Other. The company's specialty ingredients include specialty phosphate products, specialty phosphoric acids, as well as other mineral, enzyme, and botanical based specialty ingredients that are used as flavor enhancers in beverages; electrolytes in sports drinks; texture modifiers in cheeses; leavening agents in baked goods; calcium and phosphorus fortification in food and beverages; moisture and color retention in seafood, poultry, and meat; excipients in vitamins, minerals, nutritional supplements, and pharmaceuticals; and abrasives in toothpaste. It also provides food and technical grade purified phosphoric acid (PPA) used in the production of phosphate salts, as well as in food and beverages, and water treatment applications; technical grade sodium tripolyphosphate (STPP), a specialty phosphate, which is used as an ingredient in cleaning products, such as industrial and institutional cleaners, automatic dishwashing detergents, and consumer laundry detergents, as well as in water treatment, clay processing, and copper ore processing activities; and detergent grade PPA that is primarily used in the production of STPP. In addition, the company offers granular triple super-phosphate (GTSP), a fertilizer product line used for enhancing crop yields in various agricultural sectors; and merchant green phosphoric acid. It serves primarily consumer goods manufacturers, distributors, and specialty chemical manufacturers in the United States, Canada, Mexico, and internationally. Innophos was founded in 2004 and is headquartered in Cranbury, New Jersey.

22. On October 21, 2019, the Company announced the Proposed Transaction:

> CRANBURY, N.J.--(BUSINESS WIRE)-- Innophos Holdings, Inc. ("Innophos" or the "Company") (NASDAQ:IPHS), a leading international producer of essential ingredients, today announced that it has entered into a definitive agreement with an affiliate of One Rock Capital Partners, LLC ("One Rock"), a leading middle-market private equity firm, whereby One Rock will acquire all of Innophos' outstanding shares for $32.00 per share in cash in a transaction valued at approximately $932 million, including the

assumption of debt. The transaction has been unanimously approved by Innophos' Board of Directors.

The offer price represents an 18% premium to the 30-trading day volume-weighted average closing share price of Innophos' common stock ended September 9, 2019, the last trading day prior to published market speculation regarding a potential transaction involving the Company.

"After careful consideration and a thorough review of our strategic alternatives, including an outreach program to multiple potential financial and strategic partners over several months, the Board determined that a sale to One Rock is in the best interest of all of our stakeholders," said Innophos Chairman, President and Chief Executive Officer Kim Ann Mink. "We remain confident that our transformational strategy is the right path forward for Innophos; however, executing on this strategy in an increasingly volatile macroeconomic and complex financial environment as a small-cap public company remains challenging and could take longer than initially expected. While we believe our long-term goals are achievable, we believe that the offer from One Rock is in the best interest of our stockholders as it will deliver immediate and certain value. We believe this transaction represents a winning proposition for all of our stakeholders, including our employees and customers."

Tony W. Lee, Managing Partner of One Rock, commented, "Innophos' innovative ingredient solutions are used by world-leading brands across a wide range of attractive food, health, nutrition and industrial markets. The Company has a strong foundation and a transformative growth strategy. In drawing upon One Rock's extensive experience, part of our goal is to maximize Innophos' growth potential by continuing to expand its presence in high-growth food, health and nutrition markets, while further strengthening and optimizing its cash-generative core business. We look forward to working with Innophos to accomplish these goals and position the Company for continued success."

The definitive agreement includes a 30-day "go-shop" period, commencing immediately, during which Innophos, with the assistance of its legal and financial advisors, will solicit alternative acquisition proposals and potentially enter into negotiations with respect to alternative proposals. There can be no assurance that this process will result in a superior proposal or that any other transaction will be approved or completed. Innophos does not expect to disclose developments with respect to the solicitation

>process unless and until the Board makes a determination requiring further disclosure.
>
>Under the terms of the definitive agreement, the Company has suspended the payment of all dividends.
>
>The transaction will be financed through a combination of committed equity financing provided by affiliates of One Rock, as well as committed debt financing from several financial institutions.
>
>The closing of the transaction is expected to occur in the first quarter of 2020, subject to stockholder and regulatory approvals and the satisfaction of customary closing conditions. Upon the completion of the transaction, Innophos will become a privately held company and shares of Innophos' common stock will no longer be listed on any public market.
>
>Lazard is acting as exclusive financial advisor to Innophos, and Baker Botts LLP is acting as its legal counsel. Latham & Watkins LLP is acting as legal counsel to One Rock, and RBC Capital Markets, LLC is acting as its financial advisor with respect to the transaction.

23. The Board has unanimously agreed to Proposed Transaction. It is therefore imperative that Innophos's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Proxy Statement**

24. On November 14, 2019, Innophos filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

7

stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

25. With respect to the financial projections disclosed in the Proxy Statement, the Proxy Statement fails to provide material information.

26. For the Company *February Management Projections* and *Updated Management Projections* (the "Projections"), the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric Adjusted EBITDA, but fails to provide: (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of these non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 61-62.

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

>residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy Statement not misleading.

30. With respect to Lazard's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by BogA in the analysis. Proxy Statement at 46.

31. With respect to Lazard's *Public Trading Valuation Analysis*, the Proxy Statement fails to disclose (i) whether Lazard considered any other metrics besides Enterprise Value/estimated calendar year 2019 EBITDA and Enterprise Value/estimated calendar year 2020 EBITDA; and (ii) the basis for selecting the representative range multiples of 6.25x to 7.75x for the Company, especially since such a range is low as compared to the median and the mean of the comparable companies. Proxy Statement at 54-56.

32. With respect to Lazard's *Precedent Transactions Valuation Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Lazard. Proxy Statement at 56-57.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

33. With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose (i) estimated present value (as of September 30, 2019) of the unlevered, after-tax free cash flows; (ii) the basis of choosing a range of perpetual growth rate of 0% to 0.5% to the unlevered, after-tax free cash flow for fiscal year 2023 excluding the impact of value chain and manufacturing optimization initiatives, and a perpetual growth rate of 0% to the unlevered, after-tax free cash flow for fiscal year 2023 generated by value chain and manufacturing optimization initiatives; (iii) the basis of choosing a range of discount rates ranging from 7.75% to 8.75%; (iv) estimated net debt as of September 30, 2019. Proxy Statement at 57-58.

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up

to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Innophos within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Innophos, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Innophos, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Innophos, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 19, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016

14

                Telephone: (212) 545-4600
                Facsimile: (212) 686-0114
                Email: melwani@whafh.com

*Attorneys for Plaintiff*